UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| HENLEY MINING, INC., ) | |
| ) | |
| Plaintiff/Counter Defendant, ) | |
| ) | Civil No. 6:17-cv-00092-GFVT-HAI |
| v. ) | |
| ) | |
| DAVID E. PARTON, ) | **MEMORANDUM OPINION** |
| ) | **&** |
| Defendant/Counter Claimant. ) | **ORDER** |
| ) | |
| ) | |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Before the Court is Plaintiff Henley Mining, Inc.'s Motion for Partial Summary Judgment. [R. 56.] Henley Mining asks the Court to find that the "fair value" of the corporations which were combined to create Henley Mining is $446,427. In so doing, the Court would also be ruling against Defendant David E. Parton's first counterclaim; specifically, that the combined value of those corporations is actually $6,041,739. [R. 16 at 6.] For the following reasons, Henley Mining's Motion for Partial Summary Judgment [R. 56] is DENIED.

**I**

The relevant facts are undisputed. Defendant David Parton and his two brothers John and Tim were equal owners and directors in three corporations: Parton Bros. Contracting, Inc.; Bud Equipment, Inc.; and Pine Mtn. Security, Inc. [R. 56-1 at 2; R. 68 at 2.] Sometime during October 2015, Mr. Parton decided to leave the companies and collect his one-third share of their value. Mr. Parton initiated an action in Bell Circuit Court seeking a judicial dissolution of the brothers' companies in June 2016. [R; 56-1 at 3; R. 68 at 3.] That action was eventually settled.

[R. 56-3.] In the negotiations that followed, the brothers agreed to merge the companies into Henley Mining, Inc. *Id.* at 3. Instead of becoming a shareholder in this new company, Mr. Parton would receive the fair value of his interest. [R. 56-1 at 3; R. 68 at 2.] The parties further agreed that if Mr. Parton disputed the determination of fair value, Henley Mining would seek a judicial determination of fair value pursuant to Kentucky's Dissenters' Rights Statutes. *See* Ky. Rev. Stat. Ann. § 271B.13-010 *et seq.*

Henley Mining later determined that the combined value of Parton Bros. Contracting, Bud Equipment, and Pine Mtn. Security pre-merger was $446,427.00, and offered Mr. Parton $148,809.00 for his one-third interest. [R. 68 at 2.] Mr. Parton disputed the determination, and Henley Mining initiated this action in April 2017. [R. 1.] Count 1 of Henley Mining's Complaint seeks a judicial determination that "the 'fair value' of all of the Corporations combined, determined as a going concern in accordance with the law of the Commonwealth of Kentucky, is $446, 427," and therefore, Mr. Parton's "proportionate one-third (1/3) interest . . . is $148,809." [R. 1 at 7.] In his Answer, Mr. Parton denies this is the appropriate figure and counterclaims that "Henley Mining, Inc.'s determination of 'fair value' is grossly deficient in that the total value of the consolidated shares of the Corporations is an estimated $6,041,739." [R. 16 at 6.]

Now before the Court is Henley Mining's Motion for Partial Summary Judgment as to Count 1 of the Complaint and Mr. Parton's first counterclaim. [R. 56.] Both parties have hired experts to conduct valuations of the brothers' corporations before they were merged into Henley Mining. Plaintiff Henley Mining argues it is entitled to summary judgment because Mr. Parton's valuation expert failed to evaluate the corporations as a whole and as a going concern as required by Kentucky law. [R. 56-1 at 2, 7.] Therefore, Henley Mining contends its "expert valuation

2

testimony is the only evidence available to the Court that actually addresses the question presented by Kentucky law—namely, what is the value of the merged company[ies] 'as a whole and as a going concern.'" *Id.* at 2. Mr. Parton disputes this characterization. He argues summary judgment is inappropriate here because his "valuation expert, Mr. Herring, properly valued the Companies as a going concern" under the relevant Kentucky law. [R. 68 at 4.]

## II

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The burden is initially on the moving party to inform "the district court of the basis of its motion, and [to identify] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of a material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this burden is met, the nonmoving party, "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Further, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir.

3

1989). Instead, "the non-moving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

### A

Under Kentucky law, a dissenting shareholder is entitled to the "fair value of [his or her] shares and accrued interest[.]" K.R.S. 271B.13-300(1). "Fair value" is defined as "the value of the shares immediately before the effectuation of the corporate action to which the dissenter objects, excluding any appreciation or depreciation in anticipation of the corporate action unless exclusion would be inequitable." KRS. 271B.13-010(3).

Recognizing that the "definition of 'fair value' in KRS 271B.13-010(3) is of limited use because it merely provides the time at which the value should be ascertained," the Kentucky Supreme Court endeavored to clarify that term's meaning in 2011. In *Shawnee Telecom*, the Court held that "'fair value' is the shareholder's proportionate interest in the value of the company as a whole and as a going concern." *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 544 (Ky. 2011).

In addition to defining fair value, *Shawnee Telecom* expounded upon what valuation methods may be used in determining fair value. The Court held that value of the dissenting shareholder's shares is to be calculated "in accord with generally accepted valuation concepts and techniques and without shareholder level discounts for lack of control or lack of marketability." *Id.* at 559. One such valuation concept is the net asset value, which is "a standard business valuation approach" wherein "one of the things the appraiser seeks to do is to establish the market value, as opposed to the book value of the company's assets." *Id.* at 561. The Court in *Shawnee Telecom* rejected the defendant's argument that because the net asset

4

method takes into consideration the market value of a company's assets, it is contradictory to the requirement that the company be evaluated as a going concern. The Court reasoned that "[t]he company's going concern value may very well be, indeed is almost certain to be, estimated by reference to market values of one sort or another." *Id.* However, the Court cautioned that "what is being sought is the company's going concern value, not the mere liquidation value of its tangible assets." *Id.* at 562, n. 8. Therefore, "to the extent that the asset approach cannot yield a going concern value . . . it should be given no weight." *Id.*

      Herein lies the crux of the parties' disagreement. Mr. Parton hired experts Basil Jefferson Grizzle and John Herring to conduct a valuation in preparation for litigation. In his deposition testimony, Mr. Grizzle admits that he appraised the individual assets—primarily mining equipment—belonging to the relevant corporations as if they were to be sold individually. [R. 31-2 at 2.] Mr. Herring testified at his deposition that he then used Mr. Grizzle's appraisals to evaluate the companies as a whole and as a going concern through the net asset value method. [R. 689–10.] But Henley Mining says this was improper, "resulting [in] what is effectively a liquidation value, and not a sale of the assets 'as a whole.'" [R. 56-1 at 7.] Because Mr. Herring's valuation is improper, Henley Mining argues the Court is bound to accept its figure as the correct one, as "Plaintiff's expert valuation is the only evidence available to the Court that actually addresses . . . what is the value of the merged compan[ies] 'as a whole and as a going concern.'" [R. 56-1 at 1.]

      After reviewing the parties' respective expert reports and the relevant case law, the Court finds summary judgment is inappropriate. The Court is not persuaded that Mr. Herring's valuation is inherently, legally flawed simply because Mr. Grizzle appraised Henley Mining's equipment as he would for equipment for sale. Plaintiff's argument would be more persuasive

5

had the defense presented Mr. Grizzle's appraisal alone.  But Mr. Herring in fact conducted additional analysis which included not only Mr. Grizzle's appraisals, but also considered the health of the economy, the mining industry, and a financial analysis of Parton Bros. Contracting, Bud Equipment, and Pine Mtn. Security.  [R. 31-1.]

Furthermore, "[b]usiness appraisal, of course, is 'as much an art as it is a science." *Shawnee Telecom*, 354 S.W.3d at 559, n. 6.  Should the Court later reject Mr. Herring's valuation, the Court is not then bound to accept Plaintiff's valuation whole-cloth.  In a footnote, the Court in *Shawnee Telecom* emphasized that valuation "*estimates* are just that, not facts but opinions, educated but nevertheless highly subjective." *Id.* (emphasis added).  When "confronted by an array of estimates, none of which seems to account for all of the important factors but more than one of which seems to account for some of the factors," the Court is not "obliged merely to pick one." *Id.*  Instead, the Court may "make whatever use of the experts' appraisals it deems reasonable[.]"  Therefore, Plaintiff's motion for summary judgment is denied.

**B**

Henley Mining also seeks summary judgment in its favor as to Mr. Parton's request for costs and expenses pursuant to K.R.S. § 271B.13-310.  [R. 56-1 at 14.]  Section 271B.13-310(1) provides that "[t]he court shall assess the costs against the corporation, except that the court may assess costs against all or some of the dissenters, in amounts the court finds equitable, to the extent the court finds the dissenters acted arbitrarily, vexatiously, or not in good faith in demanding payment under KRS 217B.13-280."  Here, both parties assert the other is acting arbitrarily, vexatiously, and not in good faith, and both parties seek an award of costs and expenses, including reasonable attorneys' fees.  [R. 1; R. 16.]  Likewise, both parties assert they

6

are entitled to an award of costs and expenses because the other's expert valuation is too far afield to be made in good faith.

The Court denied Henley Mining's motion for summary judgment as to Count 1, determination of fair value, because it was unpersuaded—at this point—that either expert valuation was perfect. Absent settlement , the bench trial will take place and the Court will "make whatever use of the experts' appraisals it deems reasonable[.]" *Shawnee Telecom*, 354 S.W.3d at 559, n. 6. Until that happens, a ruling on an award of costs and expenses is premature. Henley Mining's motion for summary judgment as to Count 2 is DENIED.

### III

The parties vary widely in their estimations of what the brothers' corporations were worth before merging into Henley Mining, and both have presented thorough expert valuations for the Court to consider. Summary judgment is inappropriate here because the Court's role is not to simply choose one valuation over the other. Instead, the Court "may combine or choose among [estimates] as it believes appropriate given the evidence[.]" *Id.* at 564. With a determination as to fair value yet to be made, deciding an award of costs and expense would be premature. Accordingly, Plaintiff's Motion for Partial Summary Judgment [R. 56] is DENIED.

This the 3d day of August, 2020.

Gregory F. Van Tatenhove
United States District Judge