UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| HENLEY MINING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 6:17-cv-00092-GFVT-HAI |
| V. | ) | |
| | ) | |
| DAVID E. PARTON, | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| Defendant. | ) | **ORDER** |
| | ) | |

*** *** *** ***

This matter is before the Court on David Parton's Motion in Limine to Exclude the Testimony and Report of Michael A. Johnson [R. 57], Henley Mining's Motions in Limine to Exclude the Testimony of Basil Jefferson Grizzle [R. 58] and John Walton Herring [R. 59], and Henley Mining's Motion to Strike Deposition Transcript [R. 99.] For the reasons that follow, each Motion is **DENIED**.

**I**

Defendant David E. Parton and his brothers John H. Parton and Timothy L. Parton were equal shareholders in three companies: Parton Brothers Contracting, Inc., Bud Equipment, Inc., and Pine Mountain Security, Inc. Each business engaged in underground contract coal mining and each brother owned an equal one-third interest in the companies. [R. 84 at 3310; R. 88.] In June 2016, David Parton filed suit in Bell county, Kentucky Circuit Court, seeking judicial dissolution of the three companies. [R. 102 at 2.] Upon settlement, the three companies merged into the newly formed Henley Mining, Inc. and David was to be paid the fair value of his interest

in the companies. [R. 88.] The settlement also indicated that, if David disagreed with the valuation, Henley Mining was ordered to file an action to determine fair value pursuant to KRS 271B.13-300. *Id.* After the merger, Henley Mining obtained a valuation of the three companies at $446,427. *Id.* As a result, the company paid David $148,809, one-third of the valued worth of the companies. *Id.* On March 3, 2017, David tendered his dissent to the fair valuation. *Id.*

A four-day bench trial in this matter was held on August 18, 2020 through August 20, 2020 and November 20, 2020.[1] To achieve an accurate valuation of the companies, both parties hired expert witnesses who generated reports and testified at trial. At issue are the reports and testimony generated by three of those witnesses: Henley Mining's expert Michael A. Johnson, and David Parton's experts Basil Jefferson Grizzle and John Walton Herring. Also at issue is a statement made at deposition by David Nolan, the newly discovered witness deposed during the pause of the bench trial.

**II**

The Court first turns to the three Motions in Limine in this matter [R. 57, 58, 59.] In a diversity case, federal law generally governs procedural and evidentiary issues, including the admissibility of expert testimony. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Admissibility of expert testimony is governed specifically by Federal Rule of Evidence 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to

---

[1] The bench trial was temporarily paused between August and November to allow the parties to depose a newly discovered witness, David Nolan. Closings arguments were held on November 20, 2020. [R. 96; R. 108.]

the facts of the case.

Fed. R. Evid. 702. The Sixth Circuit has identified three specific Rule 702 requirements in deciding the admissibility of proposed expert testimony. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008). First, the proposed expert must have the requisite qualifications, whether it be through "knowledge, skill, experience, training, or education." *Id.* at 529 (quoting Fed. R. Evid. 702). Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* (quoting Fed. R. Evid. 702). Third, the testimony must be reliable. *Id*.

**A**

First, Defendant David Parton seeks the exclusion of the testimony and report of Henley Mining's valuation expert, Michael A. "Drew" Johnson. [R. 57.] Mr. Johnson is a member of the mining industry who has forty years of experience in parts, components, warehousing, equipment repair, complete rebuild, and machinery sales of coal mining equipment. [R. 95 at 3390.] In his report and testimony, Mr. Johnson argues that the repairs of Henley Mining's central equipment will cost $5.3 million. [R. 57 at 4.] Although David Parton does not dispute that Mr. Johnson is qualified to proffer an expert opinion, he disputes that Mr. Johnson's trial testimony and report were reliable or relevant. *Id.* at 4-12. First, Defendant argues that Mr. Johnson's testimony is not reliable "because he does not consider alternative methods for the Companies to comply with his alleged repair expenses." *Id.* at 4. Defendant argues that, because Mr. Johnson "never explained that the Companies (or anyone) did not need to have 5.3M of cash on hand to pay for these alleged repairs," and instead, could have sought alternative methods to become an operable again, his report and testimony are unreliable. *Id.* Additionally, he argues that Mr. Johnson's report and testimony should be excluded because his "rebuild proposals do

not reflect the actual work needed." [R. 57 at 5-6.] Mr. Parton argues that the estimates provided by Mr. Johnson are based on unnecessary work and, because alternative options to rebuild are likely available, his opinion is unreliable. *Id.* at 5-8. Finally, Defendant argues that Mr. Johnson's testimony and report should be excluded because his "opinion is not relevant to this case because he does not provide an analysis that is specific to the Companies." *Id.* at 8-12. Ultimately, Mr. Parton argues that Mr. Johnson's opinion is not relevant because he never analyzed the companies' financial documents to determine whether they could pay for $5.3M in repairs and because he determined the condition of the companies' equipment in October 2019, over years after the date of the merger occurred. *Id.*

In response, Plaintiff argues that Mr. Johnson was not retained to determine whether the companies could afford to make these repairs, but instead, he was retained to determine the cost of conducting the repairs itself. [R. 67 at 8-11.] Additionally, Plaintiff argues that it would be more appropriate for the Defendant to challenge whether these repairs were necessary and the price of repairs through cross examination. *Id.* at 14. Finally, Plaintiff states that, although Mr. Johnson did not view the equipment until 2019, he was aware that his task was to appraise the equipment as of its condition in 2017 and conducted his valuation in accordance with the period of the merger. *Id.* at 14-15.

Ultimately, the Court does not find Mr. Johnson's report and testimony to be unreliable or irrelevant. Moreover, the Court finds that Mr. Johnson's forty years of experience in the mining industry renders him qualified to provide an expert opinion. As a result, the Court will **DENY** Mr. Parton's Motion in Limine [**R. 57**.] However, the Court will address the substantive weight that it will provide Mr. Johnson's opinion in its Conclusions of Law and Findings of Fact. [*See* R. 110 at 3, 11.]

**B**

Next, the Court turns to Henley Mining's Motion in Limine to Exclude the Testimony of Basil Jefferson Grizzle [R. 58.] Mr. Grizzle is a certified equipment appraiser who has worked as an underground coal miner and has worked for the last thirty years for Phillips Machine, a global manufacturer and refurbisher of mining equipment. [R. 96 at 3692-96.] In January 2017, Mr. Grizzle "inspected certain equipment purported to be owned by the companies at the Arjay Schoolyard." [R. 58-1 at 4.] After spending fifteen hours inspecting over 400 pieces of equipment and supplies, Mr. Grizzle valued the companies' equipment, machinery, and supplies at $4,391,940. *Id.* at 5. In its Motion, Plaintiff argues that Mr. Grizzle's testimony should be excluded because it is not relevant or reliable. *Id.* at 7-20.

Regarding relevance, Plaintiff states that Mr. Grizzle did not value that companies' assets as a going concern, as required under *Shawnee Telecom*, but instead, simply calculated the liquidation value of the companies' assets. 354 S.W.3d 542, 544 (Ky. 2011); [R. 58-1 at 8.] Regarding the alleged incorrect valuation, Plaintiff argues "Mr. Grizzle's valuation is not tied to a going concern standard because (i) he does not appraise the property as a mass assemblage of assets, and (ii) his appraisal does not take into account whether the assets are in a condition to produce income." [R. 58-1 at 8.] Plaintiff then quotes Mr. Grizzle's deposition testimony at length in support of its argument that his valuation was conducted improperly. *Id.* at 9-12. Next, Plaintiff argues that Mr. Grizzle's testimony is unreliable because it "is based on false assumptions that he did not verify" and because he "fails to identify the principles and methods he uses and how they are applied to the data to reach his conclusions." *Id.* at 13, 15. In support, Plaintiff argues that Mr. Grizzle spent too little time appraising Henley Mining's equipment to have created a reliable opinion, relied on David Parton's statements regarding the condition of

the equipment without independent verification, and failed to explain how he determined the value of the equipment he analyzed aside from relying on his own "experience" in the industry. *Id.* at 12-19.

In response, Defendant argues that Mr. Grizzle's valuation method was appropriate under *Shawnee Telecom* and that Plaintiff's expert Scott Romans used the exact same method as Mr. Grizzle in his own valuation. [R. 69 at 3-5.] Moreover, Defendant argues that Plaintiff's arguments should be viewed as an attack against the weight of Mr. Grizzle's opinion, not its admissibility. *Id.* at 5-6. Finally, Defendant argues that Mr. Grizzle has ample expertise in the mining industry to be able to proffer reliable valuations of mining equipment and that his methods were both appropriate and thoroughly explained at his deposition. *Id.* at 6-11. Ultimately, the Court agrees with the Defendant that Mr. Grizzle's testimony is both relevant and reliable. Moreover, the Court finds Mr. Grizzle to be a qualified expert because he has thirty years of coal mining and management experience. Thus, Plaintiff's Motion in Limine [**R. 58**] is **DENIED**. The Court will address the weight it will give Mr. Grizzle's opinion in its Conclusions of Law and Findings of Fact. [*See* R. 110 at 3-4, 12-13.]

**C**

Finally, the Court turns to Plaintiff's Motion in Limine to Exclude the Testimony of John Walton Herring [R. 59.] Mr. Herring is a certified public account with over thirty-four years of accounting experience and twelve years of business valuation experience. [R. 95 at 3604-05.] After the merger of the companies, Mr. Herring was hired to determine the fair value of David Parton's interest in the companies. [R. 59-1 at 5.] In his report, Mr. Herring relied extensively on the equipment appraisal conducted by Mr. Grizzle and representations from David Parton regarding the companies' liabilities. *Id.* In its Motion, Plaintiff argues that Mr. Herring's

testimony should be excluded because it is not reliable or relevant. *Id.* at 7-15. Additionally, Plaintiff argues that "Herring should be excluded from testifying as to any adjustment of shareholder distribution liability" because his determination of liabilities was premised on the time of merger in 2017 instead of 2015 when David Parton received equipment from the companies by a Bill of Sale. *Id.* at 15-16.

Regarding reliability and relevance, Plaintiff states that, because Mr. Herring's testimony relied, in part, on Mr. Grizzle's equipment valuation, which Plaintiff asserts is unreliable, his testimony is therefore unreliable as well. [R. 59-1 at 7.] Plaintiff further argue that Mr. Herring's report incorrectly values the companies because it fails to consider that the companies' equipment should have been calculated as a going concern. *Id.* at 8-15. Finally, Plaintiff argues that Mr. Herring's testimony regarding shareholder distribution liability should be excluded because he relied on David Parton's valuation of liability and calculated the liabilities as of the time of merger instead of as of the time the Bill of Sale was issued. *Id.* at 15-16. In response, Defendant argues that Mr. Herring's testimony is admissible regardless of the admissibility of Mr. Grizzle's testimony and further argues that Mr. Herring's calculation of liabilities, much like Mr. Roman's, was based solely on the statements of a shareholder in the company and should therefore not be held to a different standard of admissibility. [R. 69 at 10-13.]

The Court finds Mr. Herring's testimony to be both reliable and relevant. Moreover, because Mr. Herring has thirty-four years of accounting experience and twelve years of business valuation experience, the Court finds that he is a qualified expert witness. Thus, Plaintiff's Motion in Limine [**R. 59**] is **DENIED**. However, the Court will address the weight it will give Mr. Herring's opinion in its Conclusions of Law and Findings of Fact. [*See* R. 110 at 4, 14-16.]

**II**

Next, the Court turns to Plaintiff's Motion to Sustain Deposition Objection. [R. 99.] During a bench trial on this matter held on August 20, 2020, Defendants requested to call Mr. David Nolan as a fact witness. [R. 96 at 150.] Plaintiff objected to this request, arguing that Mr. Nolan was not identified in pre-trial discovery and that it had not been given a chance to depose him in preparation for trial. *Id.* Defendant argued that Mr. Nolan was disclosed in its witness list provided one month prior. *Id.* The Court ultimately gave leave for Plaintiff to first depose Mr. Nolan prior to his testifying at the bench trial. *Id.* at 152. On August 27, 2020, parties conducted the deposition. [R. 97.] During the deposition, the following exchange occurred:

> Q: Mr. Nolan, based on your 23 years of experience as an underground mine repairman and based on your direct hands-on experience with these miners there at Parton Brothers, did either the 14-15 or the 12-12 need to be rebuilt when –
>
> MR. THACKER: Objection.
>
> Q -- in 2 -- in February 2015?
>
> A: No, sir. They were doing a excellent job of cutting coal. I see no reason why you'd want to pull them out and send them to a rebuild shop, because I really didn't see that much wrong with those miners that couldn't be repaired. Every piece of -- every part can come off of that miner frame and be replaced except that frame. That frame is critical.
>
> If you're experiencing frame damage, you gotta get it out, take it offline, get it outside, send it to a rebuild shop. That and the upper wear strips that the cats run on, they're in a tunnel and they're not accessible and they're not -- you can't change them underground, it has to go to a shop where they have the equipment to do that, because they have to be cut open to change the wear strip. [R. 97 at 3822-3823].

Now, Plaintiff moves the Court to sustain its objection, arguing that Mr. Nolan's answer rose to the level of expert testimony, while the preliminary witness disclosure listed him as solely a fact witness. [R. 99 at 2.] Additionally, Plaintiff argues that Mr. Nolan's statement exceeds the scope of testimony permitted for lay witnesses. [R. 99 at 2-3.]

**A**

First, Plaintiff argues that Mr. Nolan's testimony must be stricken because it exceeds the scope of the pretrial witness disclosure. [R. 99 at 2.] Under Federal Rule 26, potential witnesses are divided into three categories for purposes of disclosure. *Musser v. Gentiva Health Servs.,* 356 F.3d 751, 756 (7th Cir. 2004). First, for fact witnesses, the parties must disclose the name and contact information "of each individual likely to have discoverable information — along with the subjects of that information — that the disclosing party may use to support its claims or defenses. . . ." Fed. R. Civ. P. 26(a)(1)(A). The parties must disclose this first group of potential witnesses "at or within 14 days" after the parties Rule 26(f) conference unless otherwise specified by the court. Fed. R. Civ. P. 26(a)(1)(C). Rule 26(a)(2)(A) governs disclosures of the second group of potential witnesses, pursuant to which the parties "must disclose *the identity of any witness it may use* at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(emphasis added). These witnesses are in addition to the fact witnesses who must be disclosed under Rule 26(a)(1). The final group includes those expert witnesses who have been "retained or specially employed to provide expert testimony in the case," and the disclosure of such witnesses "must be accompanied by a written report" that has been "prepared and signed" by the expert witness. Fed. R. Civ. P. 26(a)(2)(B).

The purpose of Rule 26 disclosures of witnesses, both fact witnesses and expert witnesses, is to enable the parties to adequately prepare for trial. The commentary to Rule 26 states that the duty to disclose "extends to witnesses that the other party already knows of and to documents that the other party already knows of or even possesses." *McFerrin v. Allstate Prop. & Cas. Co.*, 29 F. Supp. 3d 924 (E.D. Ky. 2014). The commentary further explains as follows:

> The fact that the other party already knows of a potential witness or has a document, does not, by itself, achieve a critical purpose of the Rule 26(a)(1)(A) disclosures, which is to inform the other parties which witnesses and documents the disclosing party may use to support its claim or defenses. *See* Fed. R. Civ. P. 26, Practice Commentary.

In its Motion, Plaintiff argues that "Mr. Nolan was presented by the Defense as a fact witness and was not disclosed or offered as an expert witness." [R. 99 at 2.] Plaintiff refers to Defendant's pretrial witness disclosure which describes Mr. Nolan's expected testimony as follows:

> G. David Nolan – David Nolan will testify concerning (1) the identification and condition of the Companies' equipment, (2) maintenance performed on the Companies' equipment. *Id.*

Plaintiff asserts that Mr. Nolan's statement exceeds the scope of testimony described in this disclosure because it rises to the level of expert opinion testimony. *Id.* In response, Defendants argue that it "disclosed its intent to call David Nolan to testify as to the condition and maintenance performed . . ." and "to impeach Andrew Johnson's opinion that a full rebuild of the equipment was required." [R. 101 at 1.] Defendants specifically reference a statement it made on the final day of trial which indicated that Mr. Nolan maintained the miners and that the Defendants sought to offer his testimony to impeach Mr. Johnson's opinion that the miners needed to be rebuilt. [R. 96 at 3783.]

The Court is unpersuaded by Plaintiff's argument that Mr. Nolan's testimony exceeds the scope of disclosure. Rule 26 disclosures, as explained by the Federal Rules of Civil Procedure Practice Commentary, are designed to "inform the other parties which witnesses and documents the disclosing party may use to support its claim or defenses." Fed. R. Civ. P. 26, Practice Commentary. The purpose of witness disclosures, therefore, is to allow an opposing party to adequately prepare for the ensuing litigation. Here,

Defendant's disclosure clearly indicates that Mr. Nolan would testify regarding the condition of the companies' equipment. [R. 99 at 2.] His testimony does not exceed this described boundary. Additionally, Defendants made clear at trial that it planned to use Mr. Nolan's testimony to impeach one of Plaintiff's expert's testimony regarding the condition of the equipment. [R. 96 at 3783.] Thus, the purpose of the disclosure requirement of Rule 26 is not defeated because Plaintiffs were on notice, prior to the deposition, that Mr. Nolan's testimony would likely make mention of the disputed condition of the equipment.

**B**

Next, Plaintiff asserts that Mr. Nolan's statement is improper lay testimony. Rule 701 requires a lay witness's opinion to be limited to one that is "rationally based on the witness's perception, helpful . . . and not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. When a witness has particularized knowledge over a subject matter based on extensive personal experience, however, that witness may testify as a lay witness even though the matter might appear complex. *See Prime Finish, LLC v. ITW Deltar IPAC*, 2017 U.S. Dist. LEXIS 72701 at *17-*23 (finding that the sole principal and owner of an LLC could testify as a lay witness to the company's damages). Moreover, "lay testimony results from a process of reasoning familiar in everyday life, whereas an expert's testimony results from a process of reasoning which can be mastered only by specialists in the field." *United States v. White*, 492 F.3d 380, 401 (6th Cir. 2007).

Here, the parties do not dispute that Mr. Nolan's opinion testimony is both rationally based on his personal perception and is helpful to the trier of fact. [R. 101 at 3.] Plaintiff argues,

however, that the disputed opinion testimony must be stricken because Mr. Nolan's opinion about whether a miner should be rebuilt requires expert analysis. *Id.* Plaintiff states that "[w]hether the rebuild of specific industrial equipment was necessary is not testimony 'formed by reasoning processes familiar to the average person in everyday life rather than by technical, . . . or other specialized knowledge." *Id.* (quoting *United States v. White*, 492 F.3d 380, 404 (6th Cir. 2007)). In response, Defendant argues that "Mr. Nolan testified that he worked on this equipment on a daily basis and was intimately familiar with its condition." [R. 101 at 3.] Defendant further states that Mr. Nolan's testimony is not expert testimony and, instead, "is based on his first-hand experience working as a repairman in underground mines and working on a continuous miner units such as the 14-15 Miner and 12-12 Miner." *Id.* The Court agrees with Defendant. Mr. Nolan's testimony is premised on personal experience and is based on his own rational perception resulting from years of working in underground mines. It is not improper for Mr. Nolan to opine on whether a miner, which he worked within for decades, needed to be rebuilt. Mr. Nolan's opinion requires no specialized knowledge and, instead, is based on reasoning attained from his everyday life and work experience. There, Mr. Nolan's disputed statement does not violate Rule 701.

Accordingly, and being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant's Motion in Limine [**R. 57**] is **DENIED**;

2. Plaintiff's Motions in Limine [**R. 58; R. 59**] is **DENIED;**

3. Plaintiff's Motion to Sustain Deposition Objection [**R. 99**] is **DENIED**.

This the 29th day of March, 2021.

Gregory F. Van Tatenhove
United States District Judge